UNITED STATES DISTRICT COURT OF INDIANA
THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JAMES JOHNSON ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| -v- ) | CAUSE NO. 3:12-CV-00102-JD-CAN |
| ) | |
| NORFOLK SOUTHERN RAILWAY ) | |
| COMPANY a/k/a NORFOLK ) | |
| SOUTHERN CORPORATION ) | |
| ) | |
| Defendant ) | |

**PLAINTIFF'S RULE 26(a)(2)(C) DISCLOSURES**

NOW COMES the Plaintiff, James Johnson, by and through his attorneys BRUSTIN & LUNDBLAD, LTD., and submits the following disclosures pursuant to Rule 26(a)(2)(C) of the Federal Rules of Civil Procedure:

The Plaintiff is expected to call the following witnesses identified below. The subject matter on which the witness is expected to present evidence as well as a summary of the facts and opinions to which the witness is expected to testify is included.

1. **Dr. Craig Erekson**
   **Elkhart General Hospital**
   **600 East Blvd.**
   **Elkhart, IN**

It is anticipated that Dr. Erekson will testify at trial and present evidence under the Federal Rules of Evidence. The witness will testify about his qualifications, educational and professional background, areas of specialization, as well as the contents of his curriculum vitae as previously provided in discovery.

Dr. Erekson is expected to testify about the medical care, treatment, diagnosis, prognosis, and surgery performed on Plaintiff's right ankle, foot and leg. Specifically, Dr. Erekson will testify that Plaintiff suffered a comminuted bimalleolar fracture of the right ankle in his fall at Norfolk Southern on April 16, 2012 necessitating orthopedic surgery with open reduction and internal fixation. This witness will testify as to the pre and post surgical condition of Plaintiff's right ankle and foot and the testimony will be given to a reasonable degree of medical and orthopedic certainty.

Dr. Erekson will testify about Plaintiff's medical treatment and follow-up care for his fractured right ankle that is identified, reported, charted and otherwise documented in the medical and surgical records of Elkhart General Hospital, OSMC physical therapy facility, and

St. Joseph Regional Medical Center. This witness will further testify to the following medical and orthopedic opinions regarding Plaintiff's right ankle:

(a) Plaintiff's right ankle condition is permanent;
(b) Plaintiff may require future medical treatment;
(c) Plaintiff may require future surgery;
(d) Plaintiffs injuries were proximately caused by the subject incident;
(e) The medical treatment Plaintiff received was reasonable and necessary;
(f) That the bills charged for the medical treatment of Plaintiff are customary, fair, reasonable, and necessary;
(g) That a comminuted fractured ankle is a competent producer of pain in the human body and that Plaintiff's right ankle will continue to cause Plaintiff pain in the future;
(h) That Plaintiff's right ankle fracture did cause Plaintiff disability and loss of a normal life and will continue to be disabling and cause loss of normal life to Plaintiff in the future;
(i) That the time Plaintiff spent away from work due to his injuries was reasonable and necessary;
(j) That the Plaintiff may have permanent restrictions in his physical capacities to perform work.

2.  **RoccoSarli, P.T.**
    **St. Joseph Regional Medical Center**
    **611 Douglas Rd.**
    **Mishawaka, IN 46545**

It is anticipated that Rocci Sarli will testify at trial and present evidence regarding the physical therapy and post-surgical medical care and treatment of Plaintiff. Mr. Sarli will testify about his educational and professional background and qualifications in the field of physical therapy. His medical testimony will be given to a reasonable degree of medical certainty attendant to the field of physical therapy.

Mr. Sarli will primarily testify about the Functional Capacity Evaluation performed on Plaintiff on October 12, 2010. He will testify about the medical records reviewed and relied upon to complete the Functional Capacity Evaluation ("FCE"). He will provide testimony about both the subjective and objective medical testing performed in the FCE and Plaintiff's specific outcomes, findings, and testing results.

Mr. Sarli will further specifically testify about Plaintiff's profile, dexterity, grip strength, fitness, mobility, lifting, carrying, physical effort findings, and reliability of pain and disability reports as assessed and evaluated in the FCE regarding Plaintiff's right ankle injury and subsequent post-surgical condition. He will testify about Plaintiff's ability to tolerate work on a medium physical demand level. He will testify about the Matheson System of Work Evaluation

and interpret Plaintiff's objective and subjective performance on the FCE.

He is also expected to testify that the Plaintiff was compliant with the directions given to him at all times during the testing and that Plaintiff gave a full and complete effort. Mr. Sarli may testify to the reasonableness and necessity of Plaintiff's lost time from work in light of his symptoms, restrictions, limitations and performance on FCE due to his right ankle injuries.

Mr. Sarli's testimony will be in accordance and reliant upon the records, reports, notes, data, evaluations and testing results of the FCE performed on October 12, 2010. He will testify that Plaintiff's injuries and the corresponding anatomical changes serve as a competent basis for complaints of pain, disability and disfigurement, in the past, present and potentially the future. This witness is expected to testify to matters concerning whether Plaintiff may require future medical treatment, care, physical therapy and/or observation. He will testify that the Plaintiff's physical therapy was reasonable and necessary for the injuries sustained; and that the medical bills issued for said therapy sessions represented fair and customary charges for the services rendered. His testimony about the FCE and Plaintiff's objective and subjective findings will be given to a reasonable degree of medical and physical therapy certainty.

3.  **Dawn Webbe, PT**
    **OSMC**
    **2310 California Rd.**
    **Elkhart, IN**

It is anticipated that Dawn Webbe will testify at trial and provide medical evidence regarding Plaintiff's physical therapy for his right ankle injury. It is anticipated that this witness will testify about her education, background, qualifications and professional work as well as any areas of specialization within the field of physical therapy.

Ms. Webber is expected to testify about Plaintiff's injuries from the standpoint of completing physical therapy and rehabilitation of his right ankle including the pain, limitations, disabilities that Plaintiff had to endure and overcome in an effort to improve his range of motion, strength and use of the right ankle joint and right foot.

She is also expected to testify that the Plaintiff was compliant with the directions given to him at all times during the therapy process; that Plaintiff gave full and complete effort; and that Plaintiff exhibited motivation to complete his therapy in accord with directions given to him so as to make a maximum recovery. This witness may attest to the reasonableness and necessity of Plaintiff's lost time from work in light of his symptoms, restrictions and limitations.

Ms. Webbe will further testify that the injuries Plaintiff sustained in this occurrence resulted in anatomical changes that manifest in muscleoskeletal modifications that are permanent. She will testify that Plaintiff's injuries and the corresponding anatomical changes serve as a competent basis for complaints of pain, disability and disfigurement, in the past, present, and potentially the future. This witness is expected to testify to matters concerning whether Plaintiff may require future medical treatment, care, physical therapy and/or

3

observation.  She will testify that the Plaintiff's physical therapy was reasonable and necessary for the injuries sustained; and that the medical bills issued for said therapy sessions represented fair and customary charges for the services rendered.  Ms. Webbe's testimony will be in accordance with and reliant upon Plaintiff's physical therapy records and her testimony will be given to a reasonable degree of medical and physical therapy certainty.

**4.     Dr. William Buckley**
**Elkhat Clinic**
**303 S. Nappanee St.**
**Elkhart, IN 46514**

It is anticipated that Plaintiff's primary care physician, Dr. Buckley will testify at trial. Dr. Buckley will testify about his educational and professional background, medical qualifications, work history and other relevant information about his medical training and practice. Dr. Buckley will provide testimony as evidence about Plaintiff's medical and physical condition prior to the fall incident of April 16, 2010. He will testify about his medical care, treatment, and monitoring of Plaintiff subsequent to the fall and right ankle injury of April 16, 2010.

Dr. Buckley will testify as Plaintiff's primary care physician about any observations of other medical treatment provided to the Plaintiff subsequent to the occurrence.  His testimony will be in accordance with and reliant upon the medical records, reports and information concerning the Plaintiff's medical care both pre and post occurrence.

Dr. Buckley will testify that the Plaintiff's medical care was reasonable and necessary for the injuries sustained; and that the medical bills issued for his primary care of Plaintiff represented fair and customary charges for the services rendered.  His testimony will be given to a reasonable degree of medical certainty.

5**.     J.P. Purswell**
**Purswell & Purswell**
**Engineering & Ergonomics**
**2035 Mulligan Drive**
**Colorado Springs, CO  80920-1603**

Mr.  Purswell will testify at trial in this matter as a retained expert opinion witness and will provide expert opinion testimony regarding Defendant, Norfolk Southern's liability for the condition of their Elkhart, Indiana  rail yard premises that caused Plaintiff's fall occurrence and injuries. He will testify about his educational and professional background, qualifications, work history,s and other relevant information about his work in the field of engineering and ergonomics as well as his work as an expert witness. He will qualify and identify his professional credentials as documented in his curriculum vitae.

Mr. Purswell will testify about the condition of the premises on April 16, 2010 where Plaintiff fell. He will testify about the means, methods, principles utilized to develop and render

his expert opinions about the conditions present at the location of Plaintiff's injury occurrence. He will testify specifically that he utilized photographic evidence to judge the size of the railroad ties and the rail for comparison as viewed in photographs of the area of where Mr. Johnson fell to determine the size of the rock ballast. He will testify that the rock on the area appears to be more the size of "road" ballast (1.25 – 1.5 inches) than yard or walking ballast (0.75 inches or smaller. He will also testify that the use of the tie and rail dimensions to estimate the ballast size for his expert opinions is necessarily approximate, but it appears to be the only method available since the Norfolk Southern employees who investigated the accident and photographed the scene elected not to include any pictures of the ballast next to a tape measure, ruler, or yardstick.

Mr. Purswell will testify that smaller ballast can be packed more tightly, reducing the likelihood of rock shifting under a worker's foot as he or she walks across the ballast. He will opine that the peer-reviewed literature demonstrates that walking on larger rock or "road  ballast" is more fatiguing than walking on the smaller "walking" or "yard" ballast.  He will qualify his expert opinions by utilizing prior empirical analysis including Andres et. al (2005) who conducted an empirical analysis of the effect of ballast size on ankle kinematics while walking and concluded that "the overall finding from this study was that walking on main line ballast significantly increased the biomechanical loading of the lower extremities compared to walking on walking ballast."[1] He will further testify about a 1995 review of ballast used in rail yards in Kentucky by Dr. Jerry Rose of the University of Kentucky found that most railroads, including Norfolk Southern, had a policy in effect that only yard ballast should be used in areas where workers were expected to need to walk.[2]

Mr. Purswell will testify that by using the larger "road ballast" in the area where it knew Mr. Johnson would be required to walk and to work, Defendant, Norfolk Southern failed to exercise reasonable care for the safety of Mr. Johnson.  He will further testify that the condition of the ballast on the date of the accident was a contributing cause to Mr. Johnson's injury. All of Mr. Purswell's testimony and opinions will be given to a reasonable degree of engineering, ergonomics, and physics standards. Mr. Purswell's written report on his opinions as well as curriculum vitae are attached to these disclosures.

/s/  Milo W. Lundblad
Milo W. Lundblad
Brustin & Lundblad, Ltd.
10 North Dearborn Street, 7th Floor
Chicago, Illinois 60602
Phone: (312) 263-1250
Email:Mlundblad@mablawltd.com

---

[1] Robert O. Andres, Kenneth G. Holt, and Masayoshi Kubo (2005), *Impact of railroad ballast type on frontal plane ankle kinematics during walking.* Applied Ergonomics **36,**   529–534

[2] Rose, Jerry (1995) *Ballast Size for Safe Working Conditions in Railroad Yards and Terminals in Kentucky.* Research Report KTC 95-17.