UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JAMES JOHNSON,             )
                                   )
       Plaintiff,          )
                                   )
          v.               )    Case No. 3:12-CV-102 JD
                                   )
NORFOLK SOUTHERN RAILWAY   )
COMPANY a/k/a NORFOLK SOUTHERN   )
CORPORATION,         )
                                   )
       Defendant.     )

## <u>OPINION AND ORDER</u>

Plaintiff James Johnson worked for Defendant Norfolk South Railway Company ("Norfolk Southern") as a conductor. While he was working in the company's Elkhart rail yard, he slipped and fell while walking on ballast—the rocks that are typically used as a bed on which railroad ties are laid—and fractured his ankle. He sued Norfolk Southern under the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51, *et seq*.

Now before the Court is Defendant's Motion for Summary Judgment and Brief in Support of Motion for Summary Judgment [DE 31, 32] filed on December 2, 2013; Johnson's response, filed on January 31, 2014 [DE 39]; and Norfolk Southern's reply filed on February 17, 2014 [DE 40]. Additionally, Defendant has filed a Motion to Strike the late-filed report of Johnson's expert, J.P. Purswell [DE 41]. Johnson has filed no response to the motion to strike. For the following reasons, Defendant's Motion to Strike [DE 41] is **DENIED AS MOOT** and Defendant's Motion for Summary Judgment [DE 31] is **GRANTED IN PART** and **DENIED IN PART**.

# I. Factual Background

On April 16, 2010, Johnson was an employee of Norfolk Southern, working as a conductor in the Elkhart Train Yard [DE 32-1 at 4-5].  That day, Johnson, another conductor, and an engineer were working in an area of the Elkhart Yard described as "the north and south cleanout tracks," building a local train to service an industry in Goshen, Indiana [DE 32-1 at 7].

A gravel roadway runs between the north and south cleanouts, and the roadway was used for vehicle traffic in the yard [DE 39-4 at 11].  Just before he slipped and fell, Johnson unhooked several cars from the train on the south cleanout track, and walked forty feet east along the south side of the south cleanout track [DE 39-2 at 10].  He intended to cross the roadway to meet the same train on the north cleanout track.  [DE 39-2 at 9].  There was a large puddle of water and mud on the roadway, which extended to the ballast for the south cleanout, and Johnson thought that it was unsafe to walk through the mud and water, because he was concerned that the mud would get on his shoes and make them slippery [DE 39-2 at 10].  Instead, he thought the safest route to get to the north cleanout track was to walk eastward on the ballast of the south cleanout track and the puddle of standing water. [DE 39-2 at 8].  Then, on his way to meet the train at the north cleanout track, Johnson crossed over the south cleanout track and walked "half a car length to a car length" east along the north side of the south cleanout track [DE 39-2 at 10, 18].

Johnson was walking eastward, "pretty well right off the end of the tie," about a foot away from the end of the ties on the north side of the south cleanout track when the ballast gave way underneath his right foot, and he fell to his left [DE 32-1 at 23, 25; DE 39-2 at 8, 14, 16–17].  Johnson's right leg snapped as he fell [DE 39-2 at 10].  After he fell, Johnson tried to stand, but fell again because he could not bear weight on his right leg [DE 39-2 at 10].  Johnson's ankle was broken and he needed surgery to fix it [DE 39-2 at 20].

After he fell, Johnson testified that he saw a depression where his foot had sunk into the ballast [DE 39-2 at 11]. Johnson testified that his fall was caused by loose ballast, but also testified that he does not know whether he slipped on a rock, how the incident happened, or what started his fall [DE 39-2 at 18–19]. Johnson did not see anything abnormal about the ballast before he fell, and testified that "that would've been a red flare. I mean, you'd notice it" [DE 39-2 at 18].

The outside ends of the ties on the side of the south cleanout closest to the road were covered with stones, whereas the ends of the ties on the other side of the tracks were clear of stones and ballast [DE 39-2 at 40, DE 39-6; DE 39-7; DE 39-8]. Norfolk Southern had a machine that it used to tamp down ballast and make it firm whenever it repaired or replaced tracks [DE 39-4 at 4, 8–9]. Because there were several broken ties in the area where Johnson fell, Norfolk Southern employee Jeffrey Bruens, who has responsibility for track maintenance, opined that there had not been any recent repair work or tamping in that part of the tracks [DE 39-4 at 19]. Norfolk Southern plowed snow from the roadway between the north and south cleanouts during the winter months, and when it did so, the plows pushed some small stones and ballast toward the rails and ties [DE 39-2 at 37, 40; DE 39-4 at 6]. Norfolk Southern also had a machine with a mechanical broom that was used to sweep excess ballast, rock and other debris from between the tracks and butt ends of ties [DE 39-2 at 37].

The road between the north and south cleanout tracks was one of the biggest generators of complaints about grading, and it often had "cup holes" full of water and took a long time to drain [DE 39-4 at 16]. Though the road where Johnson fell had been recently graded, on the day of the accident, there was a large puddle of mud and water in the area [DE 39-2 at 10; DE 39-4 at 15].

According to Norfolk Southern, the post-incident investigation confirmed there were no defects in the ballast in the area where Johnson fell [DE 39-4 at 12]. Additionally, in 2010, the tracks in Elkhart Yard were inspected every 30 days pursuant to Federal Railroad Administration regulations [DE 39-4 at 5]. Norfolk Southern had received no complaints in the spring of 2010 about the ballast conditions in the area [DE 39-4 at 7].

According to Johnson, he was properly trained by Norfolk Southern [DE 32-1 at 19]. He also testified that Norfolk Southern provided him with safe and suitable equipment for his assigned work the day of the accident [DE 32-1 at 19–20].

After he was injured, Johnson filed a complaint under the Federal Employers Liability Act ("FELA"), 45 U.S.C. §§ 51–60 against Norfolk Southern on February 24, 2012 [DE 1].

## II. Motion to Strike

Before the Court addresses the pending motion for summary judgment, it will address Norfolk Southern's Motion to Strike "Exhibit D" to Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment [DE 41]. Johnson has not responded to the motion. The subject of the motion to strike is a report from Johnson's proposed expert witness, J.P. Purswell, which Johnson included as an exhibit in support of his opposition to the motion for summary judgment [DE 41]. This same report was the subject of Norfolk Southern's previously-filed motion to strike, which attacked the report on the ground that it was untimely [DE 25]. On February 20, 2014, the Court granted Norfolk Southern's motion in part and denied it in part [DE 42]. The motion sought to strike a number of expert reports as untimely, and though the Court denied the requests to strike the reports of treating medical experts, it granted the motion with respect to Purswell, who is a retained expert [DE 42 at 4–5]. Because the Court has already

granted the relief requested in the motion to strike, it will **DENY** the present motion [DE 41] as **MOOT**.

### III.  Motion for Summary Judgment

Summary judgment is appropriate under Fed. R. Civ. P. 56(c) when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." *Harbin v. Burlington Northern R. Co.*, 921 F.2d 129, 130 (7th Cir. 1990) (alteration in original). Under this standard, a plaintiff survives a motion for summary judgment and may proceed to trial only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).  To determine whether a genuine issue exists, the court must "view the evidence presented through the prism of the substantive evidentiary burden." *Id.* at 254, 106 S.Ct. 2505.

However, "[t]he FELA provides that '[e]very common carrier by railroad . . . shall be liable in damages to any person suffering injury while he is employed . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier.'" *Holbrook v. Norfolk Southern Railway Co.*, 414 F.3d 739, 741 (7th Cir. 2005) (quoting 45 U.S.C. § 51).  In doing so, the FELA "imposes on railroads a general duty to provide a safe workplace." *Holbrook*, 414 F.3d at 741 (quoting *McGinn v. Burlington Northern R.R. Co.*, 102 F.3d 295, 300 (7th Cir. 1996)).  So for claims brought under the FELA, a plaintiff's burden at the summary judgment stage is "much less" than in an ordinary negligence action.  *Harbin*, 921 F.2d at 130; *see also Holbrook*, 414 F.3d at 741–42 ("Because it is meant to offer broad remedial relief to railroad workers, a plaintiff's burden when suing under the FELA is significantly lighter than in an ordinary negligence case.").  "[U]nder FELA, 45 U.S.C. § 51 *et seq.*, an employee will survive summary judgment if the evidence justifies with reason the

conclusion that the employer's negligence played any part in producing the injury." *Lynch v. Northeast Reg'l. Commuter R.R. Corp.*, 700 F.3d 906, 909 (7th Cir. 2012).

Nevertheless, the FELA is not a strict liability statute, *Fulk v. Illinois Cent. R. Co.*, 22 F.3d 120, 124 (7th Cir. 1994), and it does not make the employer an insurer of its employees. *Inman v. Baltimore & Ohio R.R Co.,* 361 U.S. 138, 140 (1959); *Holbrook*, 414 F.3d at 742. To survive summary judgment in a FELA case, a plaintiff "must proffer some evidence of the defendant's negligence." *Holbrook*, 414 F.3d at 742. Chiefly, to prove that a railroad breached its duty to provide a safe place for the plaintiff to work, the plaintiff has to show circumstances that a reasonable person would foresee create a potential for harm; to show foreseeability, the plaintiff must present evidence that the employer had actual or constructive notice of the harmful circumstances. *Holbrook*, 414 F.3d at 742 (citing *McGinn*, 102 F.3d at 300); *Williams*, 161 F.3d at 1063. If the FELA plaintiff cannot establish that the railroad had actual or constructive notice of the defective condition, he cannot recover damages. *Holbrook*, 414 F.3d at 742 (citing *Williams*, 161 F.3d at 1063). However, an employee is entitled to a jury if "the proofs justify with reason the conclusion that employer negligence played *any part, even the slightest,* in producing the injury." *Lynch*, 700 F.3d at 911 (quoting *Harbin,* 921 F.2d at 131) (emphasis in *Harbin*).

Before proceeding to the bulk of the motion for summary judgment, the Court will address two preliminary matters. First, in its memorandum in support of its motion for summary judgment, Norfolk Southern argues at length that the theory of liability espoused in Purswell's report, which stated that NS improperly used "road ballast," is preempted by the Federal Railroad Safety Act, 49 U.S.C. § 20106(a)(1) [DE 32 at 8–14]. However, as discussed above, the Court has already ruled that Purswell's report must be excluded, so the Court need not

address this portion of Norfolk Southern's memorandum.  Second, Norfolk Southern also requested that the Court enter summary judgment as to Johnson's allegation, in his complaint, that it failed to provide Johnson with suitable equipment for his assigned work [DE 32 at 14], because at his deposition, he testified that he does, in fact, believe that Norfolk Southern did just that [DE 32-1 at 19–20].  Johnson has not responded to this portion of the motion for summary judgment.  Because Johnson's deposition testimony directly establishes that Norfolk Southern provided him with appropriate gear for performing his duties on the day in question, Norfolk Southern is correct that summary judgment is appropriate on that limited theory of liability.

This brings us to the crux of the motion for summary judgment.  Johnson contends that Norfolk Southern's negligence caused his fall; specifically, he claims that Norfolk Southern created conditions such that the ballast where he was walking was dangerously loose and unstable, and that's why he fell.  Norfolk Southern counters that it is entitled to summary judgment in this case because it had no notice that the ballast was loose or unsafe [DE 32 at 5]. To put it succinctly, the only issue for the Court to determine on the motion for summary judgment is whether, under the standards applicable to FELA, Norfolk Southern knew or had reason to know that the rocks were loose and therefore dangerous.

The parties seem to be in agreement that there is no issue regarding actual notice here; there is simply no evidence in front of the Court that Norfolk Southern or its employees had actual knowledge that there were dangerously loose rocks in the area at the time that Johnson fell.  And, as Norfolk Southern argues, Johnson himself conceded that he did not see anything wrong with the rocks when he walked on them, and if he had, he would not have stepped there [DE 32 at 6].  As to constructive notice, whether Norfolk Southern *should* have known about the loose rocks, Norfolk Southern has provided evidence that it conducted inspections of the area

every 30 days, pursuant to Federal Railroad Administration regulations, which turned up no indication of loose or unstable ballast, and that it had received no complaints in the spring of 2010 concerning ballast conditions in the area [DE 39-4 at 5, 7; DE 32 at 6].

Instead, Johnson argues, he need not show that the railroad was on notice of the dangerous condition because it was Norfolk Southern itself that created the conditions of the loose ballast, and thus the requirement for him to show that the railroad was on notice is "obviated" [DE 39 at 7]. In other words, Johnson claims that he does not have to prove notice where Norfolk Southern affirmatively created the hazard that caused his injury.

According to Johnson, he has presented evidence that, through a chain of inferences, would support his theory that Norfolk Southern created a dangerous place for him to work. First, he asserts that Norfolk Southern plowed snow from the roadway adjacent to the place where he fell, and because of that, rocks and ballast were thrown toward the track, as evidenced by photographs of the area [DE 39 at 5]. He claims that the side of the tracks where he fell has a deeper layer of rocks and ballast than on the other side of the track, and a reasonable jury could conclude that the extra rocks are due to the snow plowing [DE 39 at 5]. He also asserts that Norfolk Southern's road grading threw gravel and ballast toward the rails [DE 39 at 6]. Moreover, Norfolk Southern employee Bruens testified that because there were multiple broken ties in the area where Mr. Johnson fell, he could tell that there had not been maintenance performed in the area recently [DE 39 at 6; 39-4 at 19]. Johnson argues that because of that, Norfolk Southern did not have occasion to perform its routine procedures of tamping down ballast when ties were repaired or replaced, which contributed to the unstable rocks, which is an inference that a reasonable jury could reach [DE 39 at 6].

In support of this argument, Johnson cites to the Illinois state court decision in *Harp v. Illinois Central Gulf Railroad Co.*, 370 N.E.2d 826 (Ill. App. Ct. 1977).[1]  In *Harp*, a railroad crew was replacing old ties on a track, creating loose ballast, but had not yet returned to the area with a machine to tamp down the ballast, as it was supposed to do.  *Id.* at 827–28.  The plaintiff thought that the ballast in the area looked secure, but when he stepped on it, it gave way.  *Id.* The railroad argued that it had no notice of the loose ballast, but the court held that the "allegation of active negligence on the part of the appellant, if supported by the evidence is sufficient to establish liability without a showing of actual or constructive knowledge of the condition, since the condition was created by the defendant."  *Id.* at 828.  In other words, because the railroad had undertaken repairs to the area, but negligently performed them, it had created a dangerous work area for the plaintiff, who need not have demonstrated actual or constructive notice.  Accordingly, the court found, the plaintiff had alleged a theory of liability that could support a FELA claim.

Norfolk Southern counters by citing to *Brzinski v. Northeast Illinois Regional Commuter Railroad Corp.*, 892 N.E.2d 1142 (Ill. App. Ct. 2008).  In *Brzinski*, the plaintiff railroad employee was walking on a service road when he fell into a sinkhole that was not visible to the plaintiff or anyone doing a visual inspection.  *Id.* at 1144.  The plaintiff argued that though the railroad had no actual notice of the dangerous condition, the railroad had improperly constructed the service road, which allowed water to accumulate; did not perform proper inspections or repair defects that it should have detected, and that the railroad had knowledge of sinkholes at

---

[1] Though these are state court decisions which have no authoritative effect on this court's analysis, it is worth noting that "[a]ctions brought in state court under FELA are governed by federal substantive law, and federal court decisions control [the state courts'] interpretation of that statute."  *Brzinski*, 892 N.E.2d at 1145.  Indeed, the *Brzinski* court cited the Seventh Circuit's decisions in *Holbrook*, *Williams*, and *McGinn*.  Accordingly, the Court looks to these state court cases to inform its analysis, and to Seventh Circuit precedent as authority.

other locations that had injured others. *Id.* at 1144. The defendant filed for summary judgment, arguing that it had neither actual nor constructive notice of the dangerous condition. *Id.* at 1146. The *Brzinski* court distinguished the facts in its case from *Harp* by saying that in that case, "the court found that the plaintiff did not need to establish actual or constructive notice where 'active negligence' was alleged after the defendant railroad had improperly completed repairs to its track, *i.e.*, where it had *created* the hazard." 892 N.E.2d at 1147 (emphasis in original). To the contrary, in *Brzinski*, the plaintiff had not alleged the negligent *creation* of the hazard, but rather he had alleged that the defendant negligently failed to discover and fix the hazard. *Id.*

The *Holbrook* court distinguished *Harp* on similar grounds. In that case, the plaintiff slipped and fell off of a ladder, and after he fell, he saw a dab of grease on a rung of the ladder and surmised that the grease could have come from accumulated pools of grease in the rail yard, a hazard of which the defendant railroad had notice. *Holbrook*, 414 F.3d at 744. The Seventh Circuit found that the defendant did not have notice of the particular danger that felled the plaintiff, and noted that *Harp* was "inapposite to the case at bar, as there the hazards created by the defendants' action or inaction were the clear cause of the plaintiffs' injuries," whereas in *Holbrook*, whether the defendant had responded to complaints about the accumulated pools of oil was "irrelevant because . . . Holbrook has no evidence that the accumulations of which the defendant had notice had anything to do with his mishap." *Id.* at 745. In other words, the *Holbrook* court found that *Harp* was not applicable because the plaintiff in *Holbrook* had no evidence that the hazard of which the railroad had notice, which were the pools of oil in the rail yard, were the source of the plaintiff's fall, because the grease in question was in a different location and there was no evidence that the plaintiff had stepped in the rail yard grease that day.

Norfolk Southern argues that here, *Brzinski* and *Holbrook* control, as there had not been track repairs performed for years in the area where Johnson fell, and Johnson has not alleged "active negligence," but instead, it argues, he has alleged only "omissions" [DE 40 at 2–3]. However, this argument ignores the evidence presented in Johnson's response to the motion for summary judgment; there, Johnson has argued that Norfolk Southern *actively* plowed snow from the roadway, pushing rocks onto the area where he fell, and that the railroad *actively* graded the roadway, pushing more rocks onto the area, creating loose ballast, which it then did not tamp down. The photographs in the record further support his theory that there was more loose ballast on the side of the tracks closest to the roadway where he fell than on the opposite side, which he argues is due to Norfolk Southern's negligent plowing and grading. These actions, according to Johnson, would fall under the category of "active negligence," as opposed to a case where Norfolk Southern had simply failed to tamp down ballast that was loose for reasons other than Norfolk Southern's own doing.

If such actions created a situation where there was loose ballast in the area where Johnson fell, a jury could find that it was foreseeable that Norfolk Southern's active negligence caused Johnson's injury. In a FELA case, because reasonable foreseeability of harm is "an essential ingredient of [FELA] *negligence*," the factfinder "must be asked, initially: Did the carrier 'fai[l] to observe that degree of care which people of ordinary prudence and sagacity would use under the same or similar circumstances[?]'" *CSX Transp., Inc. v. McBride*, 131 S.Ct. 2630 (2011) (quoting *Gallick v. Baltimore & Ohio R. Co.*, 372 U.S. 108, 118 (1963)) (emphasis and alterations in *McBride*). In *McBride,* the Supreme Court upheld the Seventh Circuit's pattern jury instruction for FELA cases, which stated that a verdict for the plaintiff was appropriate if "[railroad] negligence played a part—no matter how small—in bringing about the injury." 131

S.Ct. at 2636. In so holding, the Court clarified that the standard for causation under FELA is distinct from the "usual proximate cause standard," *id.* at 2640, and the standard outlined in *Rogers* "describes the test for proximate causation applicable in FELA suits." *McBride*, 131 S.Ct at 2641. As the Court explained in *McBride*:

> Thus, "[i]f a person has no reasonable ground to anticipate that a particular condition . . . would or might result in a mishap and injury, then the party is not required to do anything to correct [the] condition." . . . . If negligence is proved, however, and is shown to have "*played any part, even the slightest, in producing the injury,*" *Rogers*, 352 U.S., at 506, 77 S.Ct. 443 (emphasis added), then the carrier is answerable in damages even if "the extent of the [injury] or the manner in which it occurred" was not "[p]robable" or "foreseeable." *Gallick*, 372 U.S., at 120–121, and n. 8, 83 S.Ct. 659 (internal quotation marks omitted).

131 S.Ct. at 2643 (footnote omitted).

Here, a jury could find that the railroad failed to exercise an ordinarily prudent degree of care if it pushed loose rocks and gravel onto an area where railroad employees would have to walk and did not tamp it down. Under *McBride*, if the railroad's actions "played any part, even the slightest, in producing the injury," then Norfolk Southern would be liable for damages. In a FELA case, "circumstantial evidence is sufficient to establish FELA liability, and that a jury can make reasonable inferences based on that circumstantial evidence even where conflicting inferences are also appropriate and no direct evidence establishes which inference is correct." *Lynch*, 700 F.3d at 917.

Here, there is not direct evidence that Johnson slipped on rocks that Norfolk Southern negligently pushed up against the east side of the south cleanout track, but there is circumstantial evidence from which a jury could find that such negligence played "any part, even the slightest," in producing Johnson's injury. Because of that, it is for a jury to determine whether Norfolk Southern's negligence created an unsafe work environment that caused Johnson's fall, and summary judgment is not appropriate.

Norfolk Southern raises two other matters in its summary judgment papers that must be addressed. First, in his response to the motion for summary judgment, Johnson argued that he walked on the ballast, rather than on the roadway, because rain had caused ponds of water to appear in the road, and that he testified in his deposition that the water present at the time of his fall was greater than the water present in the photographs in the summary judgment record [DE 32-1 at 25]. Norfolk Southern argues that Johnson's testimony regarding the water on the road is barred by application of Indiana's physical facts rule, as outlined in *Zollman v. Symington Wayne Corp.*, 438 F.2d 28 (7th Cir. 1971), because the photographs of the area, taken close in time to the accident, accurately reflect the conditions and contradict Johnson's testimony [DE 40 at 5–6]. The Court need not resolve this issue at the summary judgment stage, because the amount of water in the roadway at the time of the accident is not relevant to the matter of whether Norfolk Southern created the loose ballast in the area where Johnson fell. Should this testimony become necessary at trial, a motion *in limine* would be the appropriate vehicle to raise this issue.

Finally, Norfolk Southern has argued that the area of the Elkhart rail yard where the accident occurred was inspected every thirty days, pursuant to federal law, that it was in compliance with federal standards regarding ballast, and therefore, conditions could not have been such that the railroad was on notice of a dangerous condition [DE 32 at 6]. The parties have only addressed Norfolk Southern's claimed compliance with 49 C.F.R. § 213.103 in the context of Norfolk Southern's argument regarding preemption by federal law of Johnson's claims concerning the use of "road ballast" [DE 32 at 7–14; DE 39 at 8–9]. These are precisely the arguments that the Court need not consider in light of the exclusion of Purswell's report. However, as compliance with the regulation bears on the notice issue, the Court notes that the plain language of § 213.103 addresses only the issue of creating a safe roadbed for trains, and

not, as Norfolk Southern argues, with citation to a Sixth Circuit preemption case, *Nickels v. Grand Trunk Western R.R., Inc.*, 560 F.3d 426 (6th Cir. 2009), a standard for safe walkways for railroad employees. *See Grimes v. Norfolk Southern Railway Co.*, 116 F. Supp. 2d 995 (N.D. Ind. 2000); *Wilcox .v CSX Transport., Inc.*, 2007 WL 1576708 (N.D. Ind. 2007), *Grogg v. CSX Transport., Inc.*, 659 F. Supp. 2d 998 (N.D. Ind. 2009). So it is entirely possible that Norfolk Southern did in fact pass inspections for compliance with 49 C.F.R. § 213.103, but that the walking conditions were not safe for railroad employees. Again, this is a question for a jury.

## IV. Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment [DE 31] is **GRANTED IN PART** and **DENIED IN PART**. The Motion is granted with respect to Johnson's theory of liability that Norfolk Southern failed to provide Johnson with suitable equipment for his assigned work. It is denied in all other respects. The Defendant's Motion to Strike "Exhibit D" to Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment [DE 41] is **DENIED AS MOOT**.

SO ORDERED.

ENTERED:  August 6, 2014


_____/s/ JON E. DEGUILIO_____
Judge
United States District Court