UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| JAMES JOHNSON, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) Case No. 3:12-CV-102 JD |
| NORFOLK SOUTHERN RAILWAY COMPANY a/k/a NORFOLK SOUTHERN CORPORATION, | ) |
| Defendant. | ) |

## **OPINION AND ORDER**

This case arose under the Federal Employers' Liability Act. The plaintiff, James Johnson, broke his ankle while working for the defendant, Norfolk Southern Railway Company. He alleges in this action that his injury resulted from Norfolk Southern's negligence. A jury disagreed and rendered a verdict in favor of Norfolk Southern. Mr. Johnson now moves for a new trial under Rule 59(a). For the following reasons, Mr. Johnson's motion is denied. Mr. Johnson also objects to portions of Norfolk Southern's bill of costs, which the Court addresses as well.

### **I. FACTUAL BACKGROUND**

Mr. Johnson worked as a conductor for Norfolk Southern at its Elkhart Yard. On April 16, 2010, he was working with another conductor and an engineer on two tracks, putting together a local train. As he was walking on the ballast alongside one of the tracks, he fell and broke his right ankle. Mr. Johnson had not seen any loose ballast or unsafe walking conditions either that morning or recently, and he did not notice any hazardous conditions as he was walking. However, Mr. Johnson testified that as he stepped, the ballast shifted under his foot, causing his fall.

Mr. Johnson's theory of negligence was that Norfolk Southern had caused loose dirt and gravel to be thrown on top of the ballast, and that it unreasonably failed to tamp down the ballast to create more solid walking conditions. Specifically, an unpaved road ran along the tracks where Mr. Johnson was injured. Over the winter, Norfolk Southern would plow that road, and in the spring, it re-graded the road to smooth out the bumps and holes that would accumulate over the winter. Mr. Johnson argued that these activities would have caused gravel and dirt from the road to be strewn onto the adjacent ballast where he was walking. He further argued that the loose dirt and gravel on top of the ballast created a slipping hazard, and that Norfolk Southern should have driven over the ballast with a front-end loader to pack down the ballast and create a sturdier walking surface, as it sometimes did after performing maintenance on other tracks.

Norfolk Southern's primary argument in its defense was that it never had notice of any dangerous condition, and thus could not have been negligent for failing to correct it. Testimony from multiple witnesses, including Mr. Johnson, indicated that Norfolk Southern had not received any complaints about loose ballast or the walking conditions in the area of the injury. Mr. Johnson had been working in that area for a year and had not had any problems with loose ballast, nor did he notice anything irregular on the morning of his injury. Even when employees responded to the area after Mr. Johnson's injury, they did not notice any unsafe conditions or anything abnormal about the ballast. Norfolk Southern also argued that the plowing and grading might have, at worst, thrown some dirt onto the ballast, but that no dirt was present where Mr. Johnson fell.

This matter initially went to trial in September 2015, but it ended in a mistrial when the jury was unable to reach a verdict. At that trial, counsel for Norfolk Southern asked Mr. Johnson during his testimony about a statement attributed to him in an injury report created by Norfolk

Southern, designated as Defendant's Exhibit I/R-2 (the "Injury Report"). That report stated, "When Mr. Johnson was walking over the south cleanout track he stated he took 'a big step' with his right leg and while doing so his right ankle 'gave way' and rolled causing him to fall to the ground on the north side of the south cleanout track." [DE 126-1 p. 2]. Counsel for Norfolk Southern intimated that this was inconsistent with Mr. Johnson's testimony about how the injury occurred. However, Mr. Johnson denied having made that statement, and Norfolk Southern did not have any witness that was able to lay a foundation for the document, so the Injury Report was not admitted into evidence.

Prior to the retrial, Mr. Johnson moved in limine to exclude the Injury Report and any reference to it from trial, on the ground that Norfolk Southern would be unable to lay a foundation to admit it. In response, Norfolk Southern stated that it had learned that the Injury Report was authored by Ben Shepard, one of its employees, and that it would call Mr. Shepard at the retrial to offer the Injury Report into evidence under the business records exception to the hearsay rule. Norfolk Southern further indicated that the statements that the report attributed to Mr. Johnson were made to Brad Richardson, another employee, who then related them to Mr. Shepard. Mr. Johnson did not file a reply or otherwise address this new basis for admitting this document. Accordingly, the Court denied Mr. Johnson's motion in limine as moot, as its premise that Norfolk Southern did not have a witness who could lay a foundation for the document was no longer accurate. Mr. Johnson did not further address the matter prior to the retrial.

At the retrial, counsel for Norfolk Southern mentioned the Injury Report in his opening statement, and again asked Mr. Johnson during his testimony whether he made those statements. Mr. Johnson testified that he had not, and that he had not spoken to either Mr. Richardson or Mr. Shepard about the incident. During its case in chief, Norfolk Southern then called Mr. Shepard to

lay a foundation for the Injury Report as a business record. At that time, Mr. Johnson objected to the admission of the Injury Report. Mr. Johnson's attorney argued that the document was inadmissible because it was prepared in anticipation of litigation, though he did not cite authority or identify any element of the hearsay rule upon which he based this objection. Consistent with its pretrial order, the Court overruled the objection and admitted the Injury Report into evidence. However, the Court later permitted further argument on the topic. After further consideration, the Court found that the report did not qualify as a business record because, even if Norfolk Southern regularly created such records under those circumstances, it was not in the business of creating injury reports. *See* Fed. R. Evid. 803(6)(B). Thus, relying on *Palmer v. Hoffman*, 318 U.S. 109 (1943) and *Jordan v. Binns*, 712 F.3d 1123, 1136 (7th Cir. 2013), the Court held that the Injury Report was not admissible. The Court therefore struck the Injury Report from evidence. In addition, prior to closing arguments, the Court read a limiting instruction to the jury, stating that the Injury Report and Mr. Shepard's testimony about it had been stricken, and that the jury was not to consider them for any purpose during its deliberations.

At the conclusion of trial, the jury returned a verdict in favor of Norfolk Southern. Mr. Johnson now moves for a new trial, arguing that the references to the Injury Report prejudiced his case, and that striking that evidence and giving a curative instruction were insufficient to cure that prejudice. That motion has been fully briefed. As the prevailing party, Norfolk Southern also filed a bill of costs pursuant to Rule 54(d), seeking a total of $2,928.51 for transcripts and copying costs. Mr. Johnson filed an objection to that bill of costs, asking the Court to reduce the amount by $307.40. That matter is also ripe for ruling.

## II. STANDARD OF REVIEW

Under Rule 59(a)(1), a "court may, on motion, grant a new trial . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court."

4

Fed. R. Civ. P. 59(a)(1)(A). One of those reasons is that "the trial was in some way unfair to the moving party." *Venson v. Altamirano*, 749 F.3d 641, 656 (7th Cir. 2014). Where a motion for a new trial is based on an alleged evidentiary error, the movant must show more than just that the jury heard evidence it should not have. Rather, "in order to receive a new trial, the [movant] must show that the error was substantial enough to deny him a fair trial." *Perry v. Larson*, 794 F.2d 279, 285 (7th Cir. 1986); *see also* Fed. R. Civ. P. 61 ("No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial . . . unless refusal to take such action appears to the court inconsistent with substantial justice."). As the Seventh Circuit has noted, "civil litigants are entitled to a fair trial, not a perfect one, and . . . a new trial will not be ordered unless there was an error that caused some prejudice to the substantial rights of the parties." *Lemons v. Skidmore*, 985 F.2d 354, 357 (7th Cir. 1993).

### III. DISCUSSION

Mr. Johnson asks the Court to grant a new trial pursuant to Rule 59(a). He argues that a new trial is necessary because he was prejudiced by the initial admission of and references to the Injury Report, even though that document was later stricken from evidence. Mr. Johnson contends that his credibility was crucial to the outcome of the trial, and that this document was so damaging to his credibility that the jurors would have been unable to put it out of their minds, even when they were instructed that the document had been stricken and that they were not to consider it (or testimony about it) for any purpose. The result, he argues, was that that he did not receive a fair trial.

The Court disagrees. To the contrary, the Court finds that the document had little, if any, potential to impact Mr. Johnson's credibility or influence the outcome of trial, and that any prejudice was adequately cured by the limiting instruction. Mr. Johnson particularly complains

5

that the Injury Report states that he took "a big step" and that his ankle "gave way." But there is no question that Mr. Johnson's ankle "gave way"—it was badly broken. And the statement that Mr. Johnson took "a big step" is wholly inconsequential. Whether he took a big step or a little step, there is no dispute that when his right foot came down, he fell and broke his ankle. The question at trial was whether the ground onto which Mr. Johnson stepped was in a dangerous condition due to Norfolk Southern's negligence, and Norfolk Southern's defense was that it could not have been negligent because it had no notice of any dangerous conditions in the area. The size of the step Mr. Johnson took had no bearing on those issues. Likewise, Mr. Johnson had no unique knowledge as to whether Norfolk Southern created or had notice of a dangerous condition, so his testimony as to how the injury occurred was not, as he now argues, the linchpin of his case. In fact, though defense counsel noted what he characterized as an inconsistency during his opening statement, he did not suggest that it was dispositive. Rather, he stated that regardless of how the injury occurred, there would be no evidence that Norfolk Southern was negligent because it had no notice of any dangerous condition.

In addition, the Injury Report had little potential to impact Mr. Johnson's credibility in the first place. At most, the statement in the Injury Report was mildly inconsistent with Mr. Johnson's testimony at trial. Mr. Johnson testified at trial that he fell as he was walking on the ballast along the track shortly after he had crossed the track, and that the ballast gave way under his foot. The Injury Report, meanwhile, documents Mr. Johnson's story as follows, "When Mr. Johnson was walking over the south cleanout track he stated he took 'a big step' with his right leg and while doing so his right ankle 'gave way' and rolled causing him to fall to the ground on the north side of the south cleanout track." [DE 126-1 p. 2]. The Court fails to see how these statements are so inconsistent that the Injury Report would have detracted from Mr. Johnson's

credibility. The two accounts are well within the range of how the same person might describe the same incident on two different occasions, and as just noted, even the version in the Injury Report does not harm Mr. Johnson's case.

Moreover, even before the Injury Report was stricken, Mr. Johnson had quite effectively minimized the document's value. The author of the Injury Report, Ben Shepard, who testified at trial, had not personally spoken to Mr. Johnson about the incident at the time he completed the report. The information in the report had been relayed to him from Brad Richardson, another Norfolk Southern employee who Mr. Shepard believed had spoken to Mr. Johnson. But Mr. Johnson testified at trial that he did not speak to Mr. Richardson about the incident, and because Mr. Richardson was not called as a witness, Norfolk Southern could not directly contradict that testimony. Thus, the jury was unlikely to have given any meaningful weight to the statement in the Injury Report, anyway.

In addition, this was not such a close case that the Injury Report might have made a difference. Mr. Johnson's theory of negligence was that gravel and dirt were tossed onto the ballast when the adjacent road was plowed in the winter and when it was re-graded in the spring, and that Norfolk Southern was negligent in not tamping down the ballast to create a sturdier surface for walking. But no one, including Mr. Johnson, had made any complaints about the walking conditions in that area prior to the injury, nor did anyone observe any dangerous conditions at the time of Mr. Johnson's injury. Norfolk Southern also sometimes tamped down ballast on tracks to improve walking conditions, but there was little evidence that it had reason to believe that was needed as to these tracks. Even if some gravel or dirt had been strewn onto the ballast by plowing or re-grading the adjacent road, that would not compare to the type of large-scale addition or maintenance of ballast that typically prompted Norfolk Southern to tamp it

7

down. Thus, it would have been difficult to find that Norfolk Southern had notice of any dangerous condition such that it would have been negligent for failing to act. *CSX Transp., Inc. v. McBride*, 564 U.S. 685, 703 (2011) ("If a person has no reasonable ground to anticipate that a particular condition would or might result in a mishap or injury, then the party is not required to do anything to correct the condition" (internal quotation and alteration omitted)). And notably, as just discussed, the Injury Report did not address those issues, and therefore had no ability to affect the outcome of this central issue.

Finally, the Court finds that the limiting instruction and other measures taken during trial adequately mitigated any potential harm. After the Court decided to exclude the Injury Report, the Court gave the following limiting instruction:

> During Mr. Shepard's testimony yesterday morning, Mr. Shepard was asked about an incident report that he completed for Mr. Johnson's injury. The report that I had admitted yesterday has been stricken from evidence, and you are not to consider that report or Mr. Shepard's testimony about it for any purpose during your deliberations.
>
> Again, I'm referencing the incident report that came in through Mr. Shepard yesterday morning. That report and any testimony he gave relative to that incident report, I have stricken it and you are not to consider it.

[DE 144]. The jurors nodded, indicating their understanding. [*Id.*] The Court also instructed the jury multiple times that counsel's opening statements are not evidence, and instructed the jury in both the preliminary and final jury instructions that any testimony or exhibits that were stricken could not be considered as evidence.

Jurors are presumed to follow the instructions given to them. *Wilson v. City of Chicago*, 758 F.3d 875, 885 (7th Cir. 2014); *Soltys v. Costello*, 520 F.3d 737, 744 (7th Cir. 2008) (noting that the "court's instructions to the jury to disregard issues for which objections had been sustained . . . negated any possible prejudice"); *Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 732 (7th Cir. 1999). That presumption is not absolute, but Mr. Johnson has not identified any reason

8

why it should not stand here. *See United States v. Del Valle*, 674 F.3d 696, 703 (7th Cir. 2012) ("Absent evidence of an 'overwhelming probability' that the jurors were unable to follow the [curative] instructions, they are presumed to have done so."); *United States v. Smith*, 308 F.3d 726, 739 (7th Cir. 2002) ("[J]urors are presumed to follow limiting and curative instructions unless the matter improperly before them is so powerfully incriminating that they cannot reasonably be expected to put it out of their minds."). The Injury Report does not reference any sort of information that might stigmatize Mr. Johnson to the jury. Nor, as discussed above, was the Injury Report particularly consequential to the case or damaging to Mr. Johnson's credibility. The Court therefore has no reason to believe that the jury was unable to comply with the limiting instruction and disregard the Injury Report and any references to it. Accordingly, for each of those reasons, the Court finds that Mr. Johnson did not suffer any prejudice that would warrant a new trial.[1] Therefore, Mr. Johnson's motion for a new trial is denied.

### IV.  BILL OF COSTS

Finally, Mr. Johnson objects to portions of Norfolk Southern's bill of costs. After entry of judgment, Norfolk Southern filed a bill of costs under Rule 54(d), seeking $2,510.71 for transcripts and $417.80 for copies. Of those amounts, Mr. Johnson objects to $126.25 of the costs for transcripts, arguing that they represent shipping costs and are not compensable, and to $181.40 of the copying costs, arguing that Norfolk Southern did not adequately explain their purpose. Rule 54(d)(1) states, "Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). In turn, 28 U.S.C. § 1920 specifies the particular categories of costs that may be awarded. *Taniguchi v. Kan Pac. Saipan, Ltd.*, 132 S. Ct. 1997, 2001 (2012) (noting that the

---

[1] Because the Court resolves the motion on that basis, it does not reach Norfolk Southern's alternative argument that the Injury Report was admissible and should not have been stricken.

Supreme Court has "rejected the view that the discretion granted by Rule 54(d) is a separate source of power to tax as costs expenses not enumerated in § 1920" (internal quotation omitted)). Among those categories are "Fees for printed or electronically recorded transcripts necessarily obtained for use in the case" and "Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case." 28 U.S.C. § 1920(2), (4).

Norfolk Southern first seeks $2,510.71 in costs for transcripts. Of that amount, $126.25 represented shipping or delivery costs. Mr. Johnson argues that this portion of the costs is not recoverable and should be disallowed. Section 1920(2) permits recovery of "Fees for . . . transcripts," but does not limit those fees to the per-page cost for ordering a transcript. The Seventh Circuit has thus held that "costs 'incidental' to the taking of the depositions," such as "delivery charges by the court reporter," may be awarded under this provision. *Finchum v. Ford Motor Cor.*, 57 F.3d 526, 534 (7th Cir. 1995). Accordingly, because the invoices reflect that the delivery and shipping charges were incurred to obtain the transcripts (which Mr. Johnson does not contest were necessary for use in the case), the Court finds that these amounts are recoverable.[2] The Court therefore overrules this objection.

Next, Mr. Johnson objects to $181.40 of the copying costs as lacking sufficient justification. Norfolk Southern seeks $417.80 for copies it made between August and November 2015 in connection with the two trials. In support, Norfolk Southern attached a spreadsheet identifying the number of pages copied and a brief description for each. Two of the entries, accounting for $236.40 (2,364 pages at $.10 per page), contain the descriptions "Photocopies for

---

[2] The Court acknowledges that district courts sometimes disallow these costs, characterizing them as ordinary business expenses. However, when those expenses fall within a category awardable as costs under § 1920, in that they are part of the fee for the party to obtain a transcript, the Court does not see that as a basis for disallowing them.

10

trial notebooks" and "Photocopies of deposition transcripts and other materials for trial." Mr. Johnson does not object to awarding those costs. However, the remaining entries, accounting for 1,814 pages, only contain the description "Photocopies" or "Photocopies for trial." Norfolk Southern also included a cover page to the spreadsheet of the copying costs, where it characterizes them as "Copies made the month prior to trial for exhibits and preparation for trial."

A party may recover its "costs of making copies of any materials where the copies are necessarily obtained for use in the case." 28 U.S.C. § 1920(4). That category is commonly contrasted against copies made for the convenience of counsel, which are not recoverable. *E.g.*, *Williams v. Fico*, No. 11 C 1105, 2015 WL 3759753, at *6 (N.D. Ill. June 15, 2015) ("Reasonably necessary copies include those attributable to discovery and copies of pleadings, motions, and memoranda submitted to the court, but do not include copies made solely for the convenience of counsel." (internal quotation omitted)). To justify copying costs, a party is "not required to submit a bill of costs containing a description so detailed as to make it impossible economically to recover photocopying costs." *Northbrook Excess & Surplus Ins. Co. v. Procter & Gamble Co.*, 924 F.2d 633, 643 (7th Cir. 1991); *see also Nat'l Org. for Women, Inc. v. Scheidler*, 750 F.3d 696, 698 (7th Cir. 2014). However, a party must provide at least enough information about the copies to allow the Court to conclude that they are recoverable under the statute. *Chicago Bd. Options Exch., Inc. v. Int'l Sec. Exch., LLC*, No. 07 CV 623, 2014 WL 125937, at *7 (N.D. Ill. Jan. 14, 2014) ("The party seeking recovery must also come forward with evidence showing the nature of the documents copied, including how they were used or intended to be used in the case.").

The Court finds that Norfolk Southern has not adequately justified the $181.40 worth of copying costs to which Mr. Johnson objected. As noted, the descriptions for those copies simply state "Photocopies" or "Photocopies for trial." Those descriptions are not sufficient to justify the nearly 2,000 pages of copies. Norfolk Southern argues in response that it also characterized the copies as a whole as having been "made the month prior to trial for exhibits and preparation for trial." However, copies made in "preparation for trial" could easily encompass copies made solely for the convenience of counsel, so that description does not permit the Court to find they are recoverable, either. Nor would requiring some minimal additional detail make recovery of these costs cost-prohibitive. In fact, Norfolk Southern properly justified 1,752 pages worth of copies to which Mr. Johnson did not object with the four-word description of "Photocopies for trial notebooks." (Presumably referring to the exhibit binders the Court requires each party to prepare for trial.) A similarly succinct description might have justified the similar quantity of copies at issue, but was not provided. Therefore, the Court sustains Mr. Johnson's objection and reduces Norfolk Southern's bill of costs by $181.40. That results in an award of $2,747.11 to Norfolk Southern on its bill of costs.

## V.  CONCLUSION

Mr. Johnson's motion for a new trial [DE 141, 147] is DENIED. The Court also awards Norfolk Southern $2,747.11 on its bill of costs.

SO ORDERED.

ENTERED:  April 25, 2016

/s/ JON E. DEGUILIO
Judge
United States District Court

12